We'll hear argument next in Case 14-1055, Lightfoot v. Cendant Mortgage Corporation. Mr. Rosenkranz. Thank you, Mr. Chief Justice, and may it please the Court. There is only one natural way to read the language at issue here. A court of competent jurisdiction is a court that has an independent source of subject-matter jurisdiction. That is what this Court has held five times those words mean. So let's start with the plain language. The statute grants Freddie, quote, "...the power in its corporate name to sue and be sued in any court of competent jurisdiction, State or Federal." The only reference to jurisdiction in that passage is to say that you don't get to go to any Federal court or any State court, but rather, you have to choose a court, State or Federal, that must be a court of competent jurisdiction. And the only way to find out whether a court is a court of competent jurisdiction is to examine the statutes creating that court and granting it jurisdiction. Ginsburg. Does that include, you said subject-matter jurisdiction, but is this Court competent to hear this controversy would include personal jurisdiction as well, or are you limiting it to subject-matter jurisdiction? I am not limiting it to subject-matter jurisdiction. I would hasten to add this Court does not have subject-matter jurisdiction over an original action. It has appellate, you know, it has cert jurisdiction. But no, a court of competent jurisdiction at a minimum has subject-matter jurisdiction, but I think it also has personal jurisdiction. And the cases that my friends rely upon at Fannie that talk about personal jurisdiction are cases in which there was already subject-matter jurisdiction, and this Court held, hold on, wait a minute, it's not enough just to have subject-matter jurisdiction, which everyone agreed there was in those cases, it needs to be personal jurisdiction. Now, five times this Court has interpreted the words competent jurisdiction to mean, quote, outside sources of jurisdictional authority. That's from Phoenix. Or from Shoshone, this Court held that any reference to competent jurisdiction excuse me, that a reference to competent jurisdiction means, and I quote, it unquestionably meant that the competency of the court should be determined by rules theretofore prescribed in respect to the jurisdiction of the Federal courts. And Fannie's interpretation simply does not map onto the statutory language that Congress wrote. Look at the sentence. Fannie's interpretation would require the Court to read the phrase competent jurisdiction to mean different things depending upon which word modifies it. So Fannie concedes that the clause referring to any court of competent jurisdiction State cannot be read as a grant of jurisdiction to every State court. A State court can't take jurisdiction unless you point to a statutory authority for the State. Ginsburg. What do you do, what does Justice Souter's statement in Red Cross do to your argument? I'm talking about the statement on page 257 of Red Cross. An expressly authorizing suit in Federal court, a provision extends beyond a grant of corporate capacity to sue. And suffices to confer a Federal jurisdiction. That seems to say if you authorize suit in Federal court, then that's it. The specifically mentioning Federal court suffices to confer a Federal jurisdiction. I understood, Justice Ginsburg, and I think the way to look at Red Cross is to look at what Red Cross referred to as the rule that Justice Souter was describing. The rule is, and I quote, "...a congressional charter's sue-and-be-sued provision may be read to confer Federal jurisdiction if, but only if it specifically mentions the Federal courts." So you need a mention of Federal courts in order to even have a conversation about whether the may is in play. But a reference to Federal courts is not sufficient. And so another way to think about it is, sure, if a clause says sue or be sued in any court, State or Federal, Red Cross tells us that without more is a grant of Federal jurisdiction. Breyer, I mean, I find this pretty tough. I think that there are five major cases. Three are against you. Two are for you. Devereux is for you. Osborne uses the word. Incompetent jurisdiction. It's against you. Not surprisingly, Bankers 1 comes out the same way as Devereux, but the Dench Dome has weaker for you than here. It comes out the other way. And Red Cross is weaker for you than here. And it comes out the other way. So what I see going for you is one page of legislative history which says explicitly you are right. And in the end, you don't want to deny that legislative history. It helps you, doesn't it? No, no, I accept the legislative history, but we have a lot more going for us than that. This Court's interpretation of the phrase of competent jurisdiction over and over again, three times before this provision, those words were added to this provision, this Court interpreted that phrase twice in the statutory construction setting and said it must point to an outside source of authority. And our argument is that's true, but these cases that you're talking about are not directly in point. Dench Dome is the leading case on this issue, and it used the word competent jurisdiction. And John Marshall, you know, who's not, say, Justice X, did say that the language is absolutely clear. This means, because it refers probably to specific courts and isn't just a general statement of courts in general, this means that they're giving jurisdiction. It's just not just authority to sue and be sued. Your Honor, I disagree respectfully with how you've characterized these cases. So Osborne, if you wanted to write a provision that parses the legislative language the way Fannie does, you would write the Osborne provision. It says sue and be sued in all State courts having competent jurisdiction, great, and in any circuit court of the United States. That's how you distinguish State courts that don't have competent jurisdiction. Breyer, I've got that one for you, Dench Dome. My God, that seems absolutely identical to the Banker's one. It's identical, and they come out the other way, and all that's there is the word State and Federal. So, Your Honor, Dench Dome says any court of law or equity, State or Federal, this Court did not analyze that provision in Dench Dome. And so there's nothing we can't figure out what this Court was saying in Dench, because it was a drive-by jurisdictional reference in a situation in which there was clear Federal jurisdiction because there was an arising under clause. And then when you do that, it's a drive-by jurisdiction, and it's a drive-by  Sotomayor, is there a difference in a right-to-sue provision from a provision creating a cause of action? Let's do the Age Discrimination and Employment Act, which authorizes suit in any Federal district court of competent jurisdiction. How do you deal with the fact that the ADA generally is viewed as limiting jurisdiction to Federal courts? Rosenkranz. Well, Your Honor, so the answer is that provision so, excuse me, the ADA has jurisdiction, but not because of that jurisdiction. There's Federal question jurisdiction under the ADA. The sue or be sued clause is a clause that provides for the direction as to which courts you go into. And the same is true for the ADA. Sotomayor, I'm presuming they mean personal jurisdiction. So in context, one would read competent jurisdiction there as personal jurisdiction. Rosenkranz. Well, Your Honor, I disagree. It means personal and subject matter jurisdiction. It means show me where the court has subject matter jurisdiction, easy. There's a Federal question under 1331. Show me where there's personal jurisdiction. Okay. That's where it gets a little bit harder. Make sure that the person is within the confines of the court. But I would also say, just mapping again this language or the way Fannie reads it onto this statute, Fannie admits that this grant of this clause that says court of competent jurisdiction, State or Federal, does not mean a grant of jurisdiction to every Federal court either. The Federal court of claims, excuse me, the court of Federal claims, does not have competent jurisdiction except if those jurisdictional requirements are otherwise satisfied. And Fannie has never explained how you can take the same language and map it out differently to reach different results depending upon which word it modifies, and even different results when it modifies the same word. And the statutory evolution also confirms this. It unfolded in three critical steps. Step one was the original enactment. It was before Dench, and Congress chose language that, per Justice Breyer's question, it was assured would not grant jurisdiction. Step two was 1954. So now Dench has been decided. And what did Congress do? It did the opposite of what happened in Red Cross. In Red Cross, remember, there was a provision that didn't match Dench, and then Congress takes a left turn and says, we're going to match Dench. Here, Congress began with a provision that matched what was later assessed in Dench and took a right turn and added the words ''competent jurisdiction'', which this Court had previously, for example, in Phoenix, defined to mean, quote, ''depends on other provisions of law.'' Step three was 1974. After the shift to private entity was consummated, Congress further amended the charter to provide litigants with a source of diversity jurisdiction, because there was no source of Federal jurisdiction after Fannie went private and then was no longer an agency. If there was a source of jurisdiction in this sue-or-be-sued clause, there would be no purpose for diversity jurisdiction. So Congress changed Fannie's charter to say that it is a District of Columbia corporation, quote, ''for purposes of jurisdiction and venue.'' Sotomayor, well, that's arguably to keep all suits in D.C., as opposed to somewhere else. No, Your Honor. ''For purposes of venue'' doesn't mean all suits are in D.C. It means that D.C. is a permissible venue, but look to the venue provisions to figure out where the suit is appropriately brought. This was a grant of diversity jurisdiction. Every court that has ever evaluated this language has concluded it's a grant of diversity jurisdiction. Fannie walks into Federal court consistently with the only basis being diversity jurisdiction. So a dozen times since this case was first briefed, and just last Friday, Fannie is still arguing to Federal courts that this is a grant of diversity jurisdiction. You don't need diversity jurisdiction if there's a sue-or-be-sued clause that grants Federal jurisdiction. Roberts, Well, that's just a belt-and-suspenders point, it seems to me. They can rely on diversity jurisdiction. It's not a concession that they don't have general Federal jurisdiction. Understood, Your Honor, although compare it to what happened with Ginnie. So Ginnie May has Federal jurisdiction, and Congress did not at the same time in 1974. Now, it's the same charter. I mean, the sue-and-be-sued clause is actually in the same language, not same language in separate provisions. Ginnie and Fannie are treated together. One's private, one's public. Ginnie has Federal jurisdiction because it is a Federal agency. Congress in 1974 does not add the diversity provision to Ginnie's charter, only to Fannie's charter. And I do think that Breyer, you go ahead, please. No, no, please go ahead. This is really what's bothering me here, and I don't know if you can help or not. After reading through the cases pretty quickly, I would think you're right if I were doing this afresh, and particularly when you have that page of legislative history. I mean, somebody wrote that colloquy and gave it to the Senators, and they thought we don't want Fannie to have the right to go into Federal court all the time. We just want them to have the right when they otherwise would be in Federal court. But when I finish reading the cases, going back to Marshall in 1816, I say, oh, you know, there's something of a rule here. It may not make too much sense, but it's even there in Dench-Dolman, and because it's actually, I do think it is more, even stronger for the other side than this one. And then I get Red Cross, and the only thing I can do there is add some old report that sort of seemed to support the result, which is certainly weaker than your page of legislative history here. But I say, you know, it's jurisdiction. We shouldn't get things too mixed up. They're hard enough, and it seems to say, if you say State and Federal, you see where I'm going? So I don't know whether to look into it deeply in this particular case, where you're going to end up with a result that seems to be different than the other cases, or to say, well, forget it, it was all decided, keep to the precedent, forget the page of legislative history. It will be better for the lawyers, and it will be better for the judges. It will be simpler for them. And that's the dilemma that I'm in. Anything anybody wants to say to help me is welcome. Rosenkranz. Sure, Your Honor. Let me answer quickly, because I know that my white light is on. And so, look, this is perfectly simple. You need the word Federal in order to even have a conversation about Federal jurisdiction. If all you've got is any court, State or Federal, that will be enough. But if Congress, after reading that opinion that you find so powerful, Justice Breyer, says court of competent jurisdiction, there is no case out there that is – that has held that those words, those precise words, court of competent jurisdiction, means anything other than what this Court has held it means. And in 1954, by the way, Congress was deeply concerned about one thing, which is Fannie was going private. It was now going to be in the mortgage market. I did a search. There are 60,000 cases that Fannie is involved in, 60,000 cases of which 70 percent are in State court. If all of a sudden this Court says that there's Federal jurisdiction, all of those foreclosure cases are moving tomorrow to Federal court. Thank you, Your Honors. Roberts. Roberts. Thank you, counsel. Ms. O'Connell. O'Connell. Mr. Chief Justice, and may it please the Court. The government's view is that the rule of Red Cross should not be extended to a statute that authorizes a federally chartered corporation to sue or be sued in a court of competent jurisdiction. The best reading of that phrase in Fannie Mae's charter is that it authorizes the corporation to sue and be sued in a Federal or State court that is vested with jurisdiction through some other provision of law. We think there's a plausible story for why Congress in 1954 wanted to eliminate the sue and be sued clause as a basis for Federal jurisdiction, but even if you don't find that explanation completely satisfying, the text of the statute should control. The point of the Red Cross rule was to tell Congress, if you use this specific language, this entity may sue or be sued in any court of law or equity, State or Federal, this Court will take that to mean that Congress is creating subject matter jurisdiction in the Federal courts. In this case, the Court should give Congress the further guidance that if it uses the language, suit is authorized in a State or Federal court of competent jurisdiction, then that means that you have to look to some other provision of law to see if that court is vested with jurisdiction. Sotomayor, I've done, or had my clerk did, a study and there are, that she's been able to identify eight other statutes that use the incompetent jurisdiction language. A, are you aware of the number of other statutes that are identical to this? And B, are you troubled by the fact that some of those statutes may not be a private corporation fully the way Fannie Mae is? I am aware of those statutes. I have on my list seven that have just the sue and be sued clause and then no other provision that says, you know, for purpose of any suit involving this entity. We're off by one. Right. Tell me what you think. So, no, I am not troubled by this. In fact, I think this is a reason. Two of the entities are Federal agencies, the Department of Housing and Urban Development and the Department of Veterans Affairs. So a Federal question would be? No. The Federal agencies have the power to bring a suit in Federal court. They also have the power to remove a case from Federal court. But if the Court interprets Fannie's charter to mean that any case involving Fannie can be brought in a Federal court or can be removed to a Federal court, then all of those cases involving HUD, where HUD is a party or where the VA is a party, those cases can now be brought in Federal court against the agency, and they can also be removed to Federal court when the agency is a party. I'll give you an example that HUD has given to me of a time. HUD often likes to litigate these cases in State court. These are mortgage foreclosure cases. They are quintessential State court questions. There could be a case, and this happens frequently, where a lender will sue a borrower in State court. HUD may also be named as a defendant if HUD has an interest in the mortgage. HUD may want to leave that case in the State court, where the State courts address questions about mortgage foreclosure all the time. They are all State law causes of action, just as in this case. If the Court were to say that the language which is also in HUD's charter, that it can sue or be sued in any State or Federal court of competent jurisdiction, means that there is Federal subject matter over that suit, then the private party can now remove the case to a Federal court, creating delay in the resolution of the case which is to the advantage of the borrower in a mortgage foreclosure suit. HUD interprets its own sue-and-be-sued clause to just be a waiver of sovereign immunity and not to authorize Federal subject matter jurisdiction over any case involving HUD. Sotomayor, so those other five statutes that don't, is not, don't involve Federal agency are similar to the HUD and Veterans? Yes. They are Federal corporations, Federally chartered corporations. And have all of them read the statute in the same way you have? I know that the Seventh Circuit has interpreted the VA's sue-and-be-sued clause to only waive sovereign immunity and not to create Federal subject matter jurisdiction. I think there is a split in the district courts after Red Cross about the Federal home loan bank's sue-and-be-sued clause. I don't, we are definitely advocating for the approach that in all of those, as in Fannie Mae's charter, that Federal subject matter jurisdiction is not created by the sue-and-be-sued clause. That you have to. Breyer, I mean, the one that used the word competent jurisdiction, having competent jurisdiction, was Osborne. Right. But in. What do you do about that? In Osborne, I think Mr. Rosenkranz explained, the language in Osborne says all State courts have incompetent jurisdiction and any circuit court of the United States. So I think in that case, what the Court said was Congress clearly wanted to confer jurisdiction on all circuit courts of the United States. It didn't use the language court of competent jurisdiction when it referred to the Federal courts. It used that language only with respect to the State courts. Dentsch-Duhm did not use the language court of competent jurisdiction, Justice Breyer. It's the sue-and-be-sued clause that issue in that case was the same as the one in Red Cross. And as Mr. Rosenkranz explained here, Fannie Mae's charter used to have a sue-and-be-sued clause that looked exactly the same as the FDIC's, which the Court said in Dentsch-Duhm conferred Federal jurisdiction, and in 1954, Congress changed it to mean something different. One of the main rationales of the court of appeals in this case was that the work that court of competent jurisdiction is doing is that it's telling you that you can't file suit in a specialized court like a State traffic court or a Federal bankruptcy court. Well, the reason why the phrase court of competent jurisdiction would tell you to do that is because you've got to look at the statutes authorizing those other specialized courts to see if the suit that's being brought can be brought in that particular court. We are just asking for the same analysis to be done with Federal district courts. Sotomayor, what happens to all the judgments that have been entered reading this the way the Ninth Circuit did, all the past cases, in that split jurisdiction with district courts going other ways? What happens to those old judgments where there wasn't Federal subject matter jurisdiction? I would think that if those were the case, if we read things the way you want us to read them. I would think if those cases are already finished that res judicata would, you know, those cases would still stand on their own. But I think going forward, if the Court were to say there's no subject matter jurisdiction, those cases could no longer be brought in Federal court or removed to Federal court. Sotomayor, how can you have res judicata if you've never had subject matter jurisdiction? So you're talking about a case where you can bring up subject matter jurisdiction straight up the ladder, but you can't when you haven't brought it up to final judgment and you're trying to use it collaterally. Correct. If these cases are over, I mean, if these cases are still going on, then, yes, you could bring up subject matter jurisdiction, I believe. If the cases are over, there's no way that I know of to reopen the case and bring that up. I forgot the name of the ancient case that said even subject matter, as holy as it is, when you've gone, when you have a final judgment, you've gone, done everything on direct review, and then you can't on collateral review. Correct. Thank you, Justice Ginsburg. The words court of competent jurisdiction in the statute tell you to look at the court of law and see if you can bring a claim there, and we are just asking for the same rule in the Federal district courts. I mean, I guess the language that hurts you is any court of law, equity, State or Federal. I mean, that's the Dench-Dolman, and they say that, you know, puts you in Federal court. And you want to say we found eight statutes, and they say competent jurisdiction and we'd love them to be in State court. We want them to be in State court. Have you found any that say just something like in any court of law, in equity State or Federal, and you want them to be in Federal court? Well, those can be in Federal court per the court's decisions in Dench-Dolman and in Red Cross. If that's the way. What we have to say is, once you added these words in any competent jurisdiction, what they did, those words took the case out of Federal court, unless it's on other basis, and require you to go to State court. And to subtract words, God, it's, I mean, as a matter of the English language, it just seems a little tough. No, I think as a matter of an English language, that's our strongest point. It is. The natural reading of that phrase, a court of competent jurisdiction, means that you have to look somewhere else to determine if the court is a competent jurisdiction, is a court of competent jurisdiction. The court has observed that about various statutes. I see. And we're just asking for the same rule to be applied to the Federal district courts. The Respondents refer to the Federal district courts as courts of general jurisdiction, but just like a Federal bankruptcy court, the Federal district courts are courts of limited jurisdiction. You cannot typically bring a pure State law claim in a Federal district court unless there's complete diversity of citizenship and the requisite amount in controversy. So that language, court of competent jurisdiction, should just tell you, look at the statutes authorizing the Federal court and check whether this suit is authorized to be brought there. There's a few other textual points that I think reinforce the point we're trying to make. One is that section 1349 should be an important point of reference. Congress established a general rule that having a government charter is not enough to confer Federal subject matter jurisdiction unless the United States owns 50 percent of the corporation's stock. And when you have a privately owned corporation like Fannie Mae, you should be looking for a pretty clear indication from Congress that they wanted to confer subject matter jurisdiction. Roberts. Thank you, counsel. Thank you. Mr. Brooks. Thank you, Mr. Chief Justice, and may it please the Court. The Red Cross decision reaffirmed a strong and longstanding rule going back through Dench-Doom all the way to Osborne, which sets a baseline for Congress to follow when it chooses to pursue Federal policy through the corporate form. Now, when Congress expressly provides that a Federally chartered corporation like Fannie Mae may sue and be sued in Federal court, that confers jurisdiction under Dench-Doom, Red Cross, Osborne, and their progeny. Congress can obviously displace that rule if it wants to. There are a lot of ways Congress can do that. One way would be to eliminate the word Federal, as Congress did in 1954 in the very same statute that rechartered Fannie Mae for another agency. But adding the words competent jurisdiction is pretty weak tea as a solution for abolishing jurisdiction that otherwise existed, particularly given the history of what was going on. Why? By competent jurisdiction, you have a court. Does it have competent jurisdiction? Is there basis for subject matter jurisdiction or personal jurisdiction? That's what competent jurisdiction means. Right. So, Your Honor, what competent jurisdiction means here has to be understood in light of the whole phrase. And Petitioner's case, as you just heard it presented, is all about the idea that the only phrase is competent jurisdiction. That is not the whole phrase. The whole phrase is competent jurisdiction, State or Federal. That entire phrase had been interpreted three times in three different appellate decisions in the 1940s for a sister housing agency in the same statute, and that is the language that Congress adopted for Fannie Mae in 1954. Each of those appellate decisions at that time, every one of them, held that the full phrase, court of competent jurisdiction, State or Federal, conferred jurisdiction. I'm talking about the Ferguson case, the George H. Evans case, and the Sevenoaks case. Congress in 1954 would have had no idea that the language it was borrowing from another agency in the same statute that had been repeatedly interpreted would restrict Fannie Mae's access to Federal court. And that history shows the distinction. Sotomayor, let me make sure I understand the question, because Ginnie Mae historically has had the identical language to Fannie Mae. Now, FISLIC, the Federal Savings and Loan Insurance Corporation, they changed their language in the 1954 statute to remove the word Federal. We think the reason for that was that FISLIC, as understood at that time, was a federal agency. Fannie Mae, by contrast, as counsel says, was transitioning into a new structure, right? There would eventually be private ownership. And the idea here, if anything, shows we think the opposite of what the Petitioners mean here. They wanted to adopt the FHA language, the language that had been interpreted in the 40s. And again, at the time of the 54 Act, there had been no case which had held that language didn't confer jurisdiction. Now, counsel mentions five cases of this Court that have interpreted the phrase competent jurisdiction. What this Court needs to understand about those cases is the number of those five cases that interpreted competent jurisdiction together with the phrase State or Federal is zero. No case, not Shoshone, not Phoenix, not Califano v. Sanders, looked at the two phrases together. And when counsel argues that the phrase competent jurisdiction needs a separate source of jurisdiction, they're right. The separate source of jurisdiction is the phrase State or Federal, if the Court's rule in Red Cross means anything. Ginsburg. Well, your position then in competent jurisdiction, as long as you have the word Federal, State or Federal, you're home free. So it doesn't the words of competent jurisdiction don't mean anything. They don't. It's the use of the word Federal that gets you into Federal court, and of competent jurisdiction, they just tangled it all in those words and they don't mean anything. Well, actually, Your Honor, in the context of the late New Deal era, the words competent jurisdiction meant a lot. They just don't mean what the Petitioners say they mean, right? So the three things we think competent jurisdiction was doing in the contemporary history of the New Deal, of the 40s and early 50s, was these three things. So the first thing was there was a very vigorous debate in the appeals courts about the nature of these new New Deal entities in terms of whether they were limited by the Tucker Act and could only be heard in the court of claims or whether they could be heard generally in the district courts. This was the precise question presented in Ferguson, a case I might add that the Solicitor General has previously interpreted in briefing to this Court as conferring jurisdiction under these exact same words. That was the S.G.'s briefing in the Portsmouth case, okay? But what competent jurisdiction in this context was held to mean at that time was a direction that general jurisdiction courts and not only specialized jurisdiction courts could hear the case. The way the Fourth Circuit put it in Ferguson at the time was that it would be puzzling if this exact phrase, later borrowed for Fannie Mae, could be heard in any State court, but in Federal court only in the court of claims. And that issue was resolved. The second thing is that the court could have said general jurisdiction. They certainly could have. Ginsburg. Instead of saying of competent jurisdiction, when competent generally means, is this the sue and be sued clause gives the corporation capacity to sue and be sued, but does this Court have authority to proceed in this category of cases? Yes, Your Honor. So the way we think all these things work together is, first of all, as I say, the entire phrase, court of competent jurisdiction, State or Federal, had been unanimously held to confer subject matter jurisdiction. Those are the cases we talked about, and there were no cases to the contrary at the time. And the understanding of what competent jurisdiction was adding was twofold. First of all, from Congress's perspective at the time, I think it's fair to say they weren't thinking about much, because the 1954 Act was a 150-page comprehensive reform of Federal housing policy having very little to do with jurisdiction. And we think what happened is they simply borrowed a phrase that had been unanimously held to confer jurisdiction, and they put it in for Fannie Mae. There was no other reason to think they meant anything different from that. But we also know that less than two years before the 1954 charter for Fannie Mae was looked at the phrase competent jurisdiction on a stand-alone basis and said that all it referred to at that time in that context was personal jurisdiction. That doesn't mean that's what competent jurisdiction means always, but what we think it means is when coupled with the words State or Federal, it means personal jurisdiction, courts of general jurisdiction. Now, Justice Sotomayor earlier asked the question about how many statutes had sue-and-be-sued clauses like ours. We have the same count, Your Honor, that your clerk has. We have nine total, including Fannie Mae. Sotomayor, We now have three versions, but that's okay. I'm going to go with nine. But here's what else we know. The number of statutes that have the phrase competent jurisdiction alone, based on some Lexis research very early this morning, is 781. So if the phrase competent jurisdiction together with State or Federal exists only nine times, but competent jurisdiction as a generic matter occurs 781 times, that's the rule that we urge on this Court today. The rule is, when combined with the grant of jurisdiction embodied in the word Federal under Red Cross, you have the personal jurisdiction and general jurisdiction holdings of other cases. You have the grant of subject matter jurisdiction per Red Cross and its progenitors, and that becomes the jurisdictional rule that is very clean. Now you're pro you're I'm sorry. So, Your Honor, I was going to go ahead. Your friend on the other side scares me when he says there are 60,000 cases that are going to be added to the Federal docket. Do you have an answer to that? I have many answers to that, Your Honor. But the easiest answer is this. The easiest answer is no one in this country. Don't tell us we're not working hard enough. I do recall, Justice Kennedy, that once upon a time the Court took 150 cases a year. Maybe foreclosures could be among them. They were easier cases. Perhaps I should sit down. Your Honor, the easiest answer to that is that it's undisputed in this case that Freddie Mac, whatever one thinks of the Fannie Mae charter, Freddie Mac has clear, undisputed, belt-and-suspenders jurisdiction. Freddie Mac has almost as many foreclosures as Fannie Mae has. There has been no race to the Federal court. Ginsburg. But there's a specific statute that makes that crystal clear. And if we we if Congress wanted Fannie Mae, which was going private, to be treated the same way as Freddie Mac, then why didn't it say the same thing for Fannie Mae, as it said? Well, so, Your Honor, we know a couple things that Congress thought about Freddie Mac. But just let me make sure I've closed off on the Chief Justice's question, which is the fact that there's no race to the Federal courthouse on foreclosures for Freddie Mac tells you what you need to know about Fannie Mae, its sister organization. Now, Justice Ginsburg, the issue about Freddie Mac is several-fold. So the first thing we know is when Freddie was created in 1970, the legislature in both the House report and the Senate report made crystal clear that Congress's intention was to create an entity that had identical powers, that would develop in parallel, and that would have no advantage over Fannie Mae. We know that was their intention in drafting it. Now, the words were unquestionably different, just as the words in the Red Cross Charter were different from the words in the Second Bank of the United States Charter, and yet the outcome was the same.  So Congress sat down without 60 years of history, without the need to extricate a legacy agency from Ginnie Mae with a privatization scheme over six different amendments, and to simply sit down and say, this is what we think the GSE should look like. Breyer, I just want you to talk at some point. I mean, there is a page of legislative history which could not be more clear. It says exactly what the government said. It says they are asked, does it do this, aren't we giving these corporations the right to go into a Federal court, although the matter may be purely a State matter? That's not what we intended. All we intended to do, and then they say, well, you know, they have to look to see whether it's really a State case or whether it's really a Federal case. I mean, and the words competent jurisdiction do, she says, do that. That is their natural meaning. I hadn't quite taken that in, but it is their natural meaning, that what's the point of having these here if the statute without them would grant jurisdiction to go into Federal court, if you want? Well, Justice Breyer, on the other hand What do we do with that? What do I do? Maybe you could just say you shouldn't look at legislative history. I'm not prepared to say that. What should I do? Justice Breyer, two points. So first of all, on the natural reading, I would just urge that the natural reading of competent jurisdiction standing alone is different from the natural reading of competent jurisdiction State or Federal. And there is no case, I emphasize, that holds those words together, don't confer jurisdiction. But on the question about what was, you know, how to understand the colloquy in 1934, there's one respect in which that colloquy could be clearer, and that respect is if the colloquy related to the statute that created Fannie Mae. That would make it clearer. But as it turns out, the 1934 statute that counsel cites in the briefing was not the statute that created Fannie Mae, and so it's not that much more probative than if it had been the legislative history of an utterly unrelated statute. Okay? In 1934 in the Housing Act, Congress authorized the creation of entirely different private mortgage associations, which never came into being. So the hope in the Middle Depression in 1934 is that private capital would come into the market pursuant to that statute in places, if you read the rest of the legislative history, in places like Houston, Texas, and Chicago, and New York, and would start creating liquidity to solve the problem. They didn't happen. So in 1938, a new statute was passed. That was the same year, I might add, that Senator Bulkley, the senator whose legislative history is quoted, lost his re-election campaign. But for this reason. We can only assume, or perhaps hope. But in any case, 1938 was a different statute. The Congressional Charter for Fannie Mae, though, wasn't even created in 1938. The Congressional Charter for Fannie Mae that's being reviewed today was created in 1948, one year after the Red Cross Charter was adopted, and six years after Dench-Doom. And the language adopted in 1948 was the Dench-Doom language. So somebody has to prevail, either the Supreme Court unanimously in Dench-Doom or the failed Senator Bulkley. We think the answer is most likely this Court in Dench-Doom followed in Red Cross. Roberts. The Federal courts are, maybe stepping back a bit, they're courts of limited jurisdiction. And to get into them, you have to carry, I think, a significant burden to establish your right to be there. Now, I think you have to do more than win 51-49, given a presumption against Federal jurisdiction. Do you think, I suspect you think you do win by more than 51-49, but it seems to me that it is a consideration that we need to take into account. So, Mr. Chief Justice, there's no question that the courts are limited jurisdiction courts and that we should look at subject matter jurisdiction with a careful eye. Having said that, this fundamentally is a case about statutory construction. It's about what did Congress mean to do in 1954. That's really all it's about. I don't think there's a serious question but that under Article III. Ginsburg. But there's so many ways that you could – if you want to make sure that this entity gets into Federal court all the time, what Congress did with Freddie Mac is said, Freddie Mac will be deemed to be a Federal agency for jurisdictional and removal purposes. Now, that is very clear. It means it can come into Federal court to sue. It means it can remove it for suit in State court. This compared to court of competent jurisdiction, which I go back to competent jurisdiction, competence refers to the ability of the court, which consists of two things, subject matter and person. So, Your Honor, let me begin where you ended, if I might, and just say that this jurisdiction, again, standing alone, okay, has multiple different meanings depending on context. In United States v. Morton in 1984, this Court held that it sometimes refers to subject matter jurisdiction and sometimes refers to personal jurisdiction, citing cases. In the earlier case law of Blackmar v. Gair, which was the case decided just two years before our statute was decided, it said that in that context the phrase only referred to personal jurisdiction. So I think the only way to harmonize all of these cases is to say that where competent jurisdiction is included in a phrase that has the Red Cross language, slash Osborne, slash Dench-Duhme, it means all of the other things that competent jurisdiction normally means, personal jurisdiction, courts of general jurisdiction, et cetera. And that's what the case law holds. But the most of the cases that are used in the case law are not. Kagan. It's just personal jurisdiction. Correct. That's exactly right. And again, because this is a case about Congress's intention in adopting a statute, what is critical to understand is when Congress borrowed this language that had preexisted for the Federal Housing Administration for 20 years and grafted it on to Fannie Mae in its verbatim entirety, every case that had interpreted that language had held it was sufficient to confer subject matter jurisdiction so strongly that in the Sevenoaks case, in 1948 in the Fourth Circuit, just six years before our statute, the Fourth Circuit said that those words were no more restrictive than the phrase in any United States district court. That's the tapestry on which Congress was weaving at the time. Now, let me address, if I might, just briefly, the policy issue. We've talked about the text and the history, but counsel spent a few moments talking about this privatization concept and how it would be that what must have happened in the 50s was Congress was going to treat Fannie Mae like any other private company and deprive it of special access to the Federal courts. The presumption behind that argument is that, naturally, Congress would never want a privately-owned company to have special access, except we know from the Second Bank of the United States in Osborne that there are times when a privately-owned company is sufficiently important, it can have special access. The Second Bank was 80 percent owned by private shareholders. Fast-forward two centuries to 1970, we know that Freddie Mac was created entirely privately-owned at its inception, with clear and undisputed access to the Federal courts, admittedly with different language, of course, because it was writing in a different era and writing on a different slate without all the baggage that Fannie Mae had gone through. But there's no question that privately-owned instrumentalities, when pursuing a sufficiently important Federal purpose, like housing, can qualify under these circumstances. But the other problem with their theory, if it fails as a theoretical matter, is that it also fails in its mechanism. The truth is this. Congress did not privatize Fannie Mae in 1954. On the contrary, even when Fannie Mae became privately-owned, under the 1954 Act, it remained a Federal government agency, and it still had special access to the Federal courts under 1345. So if there had been a conscious legislative judgment to take Fannie out of the Federal courts at that time, they surely would have had to do the work of taking away its agency status. That didn't happen. Ginsburg. Didn't take them out of the Federal court. They can be there if there's diversity or if the claim arises under Federal law. That's true, Your Honor. That exact issue, however, I might point out, was raised specifically in Red Cross. It was a point of discussion in the Red Cross oral argument before this Court that Red Cross had repeatedly removed on diversity grounds. And that issue was pointed out in the opinion as not being particularly relevant. Lots of companies remove on lots of grounds all the time. And by the way the Red Cross didn't have the competence language. It was just any court, State or Federal. That's true. But the point I was making is that the fact of diversity jurisdiction didn't have some negative implication for other sources. And indeed, the Freddie Mac charter is very powerful evidence that that shouldn't matter. Freddie Mac, talk about belt and suspenders, has a charter which says sue and be sued in State or Federal court. It also says Freddie doesn't say competent jurisdiction. But what else Freddie says is Freddie says that Freddie shall be deemed an agency for 1345 purposes. It separately says Freddie shall have special statutory authorization to remove, notwithstanding the limitations of 1442. So Freddie has four distinct grounds for getting to Federal court. Sotomayor So why didn't they do that for Fannie Mae? Because we, I mean, it's hard to know the subjective intentions, Justice Sotomayor, of the framers of our charter. But the original charter language was written in the 30s and 40s. It was written at a time when we were connected with multiple other agencies. We were part of the Department of Housing and Urban Development. We comprised what became Ginnie Mae. And our language was an attempt to do essentially removal surgery, to separate us from this big accretion of language over decades. Freddie Mac didn't have that problem. So Freddie Mac was what one would do if you were starting from scratch. I will say, I am reminded of Justice Kagan's colloquy in the last argument, though, about what would happen to a Hill staffer looking at the 1954 statute. And I'm trying to imagine what would happen to the poor Hill staffer if he came and he said, well, listen, we'd like to change Fannie Mae's language. We want to add this competent jurisdiction language. Now, that's only ever been looked at three times before, and all of those cases have said that confers jurisdiction. But we think that was just dicta or perhaps wrong, and so we would go ahead and use it as a way of removing jurisdiction. That doesn't sound plausible any more in this case than it did in the prior case to me, given what the case law backdrop was of the time. Now, if I might, I'd like to say one point about the Freddie Mac issue, because obviously, you know, we are sister companies. Obviously, Freddie Mac has different language. The question is, is this a good thing for our side? Is it a bad thing for our side? Our view basically is Congress said what it meant in the 1970 reports, House and Senate. It said the companies were supposed to be parallel, they were supposed to have no advantages over each other, and have all the same powers. The question for this Court is, why would Congress, although it used a different language across multiple powers, why would it have wanted Freddie Mac to have the same mortgage acquisition powers, the same securitization powers, the same tax exemptions and SEC exemptions, the same access to treasury lines of credit, but have different Federal Court litigating powers? There's no answer to that. And all we know is that in terms of the Federal interest in access to the Federal courts, what we know is that Fannie is the same as Freddie Mac, only much, much bigger. So it doesn't make a lot of sense to imagine that a $3 trillion company, the largest company in the United States by assets, creating housing across the country just like Freddie Mac, would have been intended not to be protected by Federal court  Breyer. Did you, by the way, look it up? I mean, is there – did you try to find out where this language really came from? I mean, somebody wrote it. It didn't just have computers write it. I mean, there was a human being who wrote it. Yeah. That's – Who? Where did he come from? Who did he work for? Well, it was the 40s. Does anybody know? He was fired. He was fired. It's possible it was a former staffer for Senator Boldly, although I certainly hope not. Your Honor, the – here's what we know. We know the language preexisted. We know it wasn't created in 19 – I mean, those words competent, you know, in any court of competence jurisdiction. State or federal. Yeah, state or federal. But, you know, I've got that point. I've got it. I just want to know who did this. If I find them, I will let you know. Your Honor, here's what we do know. We know the language was not de novo in 1954. We know it was written in the 30s for the Federal Housing Administration. That's what we know. That's where the phrase first came from. And we know that that language had been repeatedly held to mean one thing, and Congress had no indication it could have meant anything else. We know from Ferguson, from George H. Evans, and from the Sevenoaks case at a minimum, okay, that that phrase, competent jurisdiction, state or federal, conferred jurisdiction. Here's what else we know. We know that in briefing before this Court in the 80s, looking at this exact language, it's Section 1702 of the National Housing Act, the Solicitor General filed a brief in opposition to certiorari in this Court in the Portsmouth Redevelopment case, and in that brief, citing Ferguson, the Solicitor General's office said that phrase creates jurisdiction in the district courts. Okay? That's what we know. That has always been the understanding. And if we didn't have that history and we didn't have that case law, we might write it differently on a blank slate. But writing 200 years after Osborne and in the wake of all of that New Deal-era case law, we know what it means. The disruption that would be created in the markets, would this Court suddenly reverse the lower courts, and there are multiple of them all coming to the same result, at least three in the courts of appeals, and hold that Freddie Mac has different powers than Fannie Mae has? It would be significant. Robertson, Your friend on the other side suggests there was a reason for treating them differently, which is that the board, the Freddie board, is, consists of Federal officers, while the idea, of course, is that Fannie's board, two-thirds of it, does not. Right. But the Fannie board, unlike the Freddie board, was one-third appointed by the President of the United States until conservatorship in 2008, and at the same time had the same special treasury access, the same tax exemptions, the same SEC registration exemptions. I mean, Your Honor, there's no material policy difference between these two agencies. And again, we have the legislative history that shows an intent to treat these the same. I will say that since 1974, every GSE statute, and there have been many, has simultaneously imposed identical amendments to both the Fannie Mae and the Freddie Mac charters. So since Freddie was created, Congress has never treated one differently, not in the 70s, not today. So there's no plausible reason why they would have wanted these treated differently. Do you know why they have that different structure on the board of directors? Well, again, Your Honor, and it's interesting, I've actually personally spoken to some of the original Fannie Mae directors from the late 60s, okay? They were all former government officials because Fannie was, in 68, being extricated from its Federal agency role. Freddie Mac was a clean sheet of paper. Freddie Mac was created the way that the Congress of 1970 would have wanted it. Fannie Mae wasn't. Fannie Mae was inherited from generations earlier and had to be torn apart from Ginnie Mae. That's why the original board of the private Fannie Mae in 1968 consisted of Paul Volcker, who at the time was a former HUD undersecretary. It consisted of a former general counsel of HUD. They were all Federal officials at that time, and it took multiple years before they could be extricated. There's just a history here, which makes it different. But I would reemphasize, Fannie Mae is the largest participant in the largest market in the U.S. economy. Holding that Fannie Mae has different powers and lesser powers than Freddie Mac has simply because the language of the 50s and a complicated history differed a little bit from the language of the 70s would be a significant policy shift that we would argue isn't justified by either policy or history or text. If there are no further questions, thank you. Roberts. Thank you, counsel. Mr. Rosenkranz, three minutes. Rosenkranz. Thank you, Your Honor. Just a couple of points. First, Justice Breyer wanted to know, what do you do when the language points one way and the cases seem to point another? I would dispute that the cases seem to point another, but my direct answer is this Court has never gone wrong by going with the language, and in those previous cases, what the Court was trying to do in each case was go with the language, right down to Red Cross, where the operative principle was, what did this very language mean the last time this Court addressed it? Justice Breyer, you also asked, which is simpler for lawyers? Now, Fannie doesn't dispute that our reading is a natural reading of the language. Fannie doesn't even dispute that it's the most natural reading. Instead, its entire argument revolves around this proposition that it might actually mean other things. But I still don't know what Fannie thinks it means. Fannie says it could mean personal jurisdiction, it could mean venue, it could mean general jurisdiction. Plug each of those words into the statute, and it just doesn't parse. But the bottom line is you need to commit to what that meaning is, and this Court can't go wrong by interpreting those words to mean what this Court has said of competent jurisdiction. Kagan.  Kagan. Kagan. So suppose it means personal jurisdiction. Why doesn't it parse? Okay. So now the statute says Fannie can sue or be sued in any court that has personal jurisdiction over the party's State or Federal. Well, the Federal court of claims has personal jurisdiction over Fannie, but this was not a grant of jurisdiction because the whole idea is that this now turns into a grant of Federal subject matter jurisdiction. It's not a grant of jurisdiction to Fannie. So what about the court of appeals cases that Mr. Brooks has addressed? Those cases did not interpret the phrase of competent jurisdiction, and they were not about Federal jurisdiction. Everyone understood in those cases, Ferguson and so on, that there was Federal jurisdiction. The question was whether something about the Tucker Act trumped district court jurisdiction to move the cases to the Federal court. Excuse me, to the court of Federal claims. Sotomayor's position in Portsmouth? Oh, Your Honor, I can't explain the positions that the government has taken, but the government has said that those were also kind of drive-by jurisdictional references in cases that simply did not involve the question of what is the source of Federal jurisdiction. If I may, one last point on Fannie and Freddie. Why did Congress treat them differently? The answer is different era, 32 years apart, and better lobbyists. Freddie was being supported and pressed by the Federal Home Loan Board, what used to be called the Home Loan Bank Board. They were ardent that Fannie was going to stop protecting Federal interests. They wanted an advantage, so Congress said, we're not giving them any advantage. But case after case has held that, of course, Freddie has jurisdiction. If I may, just one more sentence, but the vast majority of cases have held, before this case came along, the vast majority of cases have held that there was no automatic jurisdiction for Fannie. Thank you, Your Honors. Thank you, Counsel. The case is submitted.